**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VALERIY KARAKENYAN,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 20-346 (JEB)** |
| **U.S. CITIZENSHIP AND IMMIGRATION,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

This case presents the latest installment in Plaintiff Valeriy Karakenyan's long-running quest to qualify for the EB-5 visa program, a category reserved for aliens who make qualifying investments in United States commercial projects. Plaintiff enjoyed some success when Defendant United States Citizenship and Immigration Services approved his initial petition, but he was ultimately stymied when the agency revoked that approval. Karakenyan believes that he satisfied the prerequisites for the EB-5 program and that USCIS and Defendant Department of State violated the Immigration and Nationality Act and the Administrative Procedure Act in denying him access to it. He asks the Court, among other things, to set aside USCIS's revocation of his petition and declare that he is eligible for an EB-5 visa.

The Government does not parry Plaintiff's arguments on the merits but instead moves to dismiss on jurisdictional grounds. This is a wise strategy, as the Court agrees with Defendants that Congress has divested courts of jurisdiction over Plaintiff's claims against USCIS, which present non-justiciable challenges to the merits of the agency's revocation decision. Karakenyan's attempts to recast this substantive challenge as a procedural one or as presenting a

1

predicate legal question fare no better.  Nor does he gain traction in suing the State Department

as he lacks standing to pursue this Defendant.  The Court will therefore grant the Motion.

## I.     Background

### A.  EB-5 Program

One of myriad creations of the Immigration and Nationality Act, the EB-5 Immigrant

Investor Program "grants legal resident status to qualified foreign nationals who invest capital in

a new commercial enterprise."  Wang v. U.S. Citizenship & Immigration Servs., 375 F. Supp. 3d

22, 26 (D.D.C. 2019); see also 8 U.S.C. § 1153(b)(5).  To qualify for an EB-5 visa, an individual

must invest at least $1 million into a new, restructured, or expanded business or commercial

project in the United States.  See 8 U.S.C. § 1153(b)(5).  The investment must, among other

things, create at least ten full-time jobs for United States workers, and the applicant must

demonstrate that she "will be engaged in the new commercial enterprise, either through the

exercise of day-to-day managerial control or through policy formulation."  7 C.F.R. § 204.6(j);

see also 8 U.S.C. § 1153(b)(5).

Participating in the EB-5 process is no stroll in the garden, however; it involves several

stages and unfolds over a period of years.  An individual must first submit a Form I-526 petition

to USCIS to "establish that he or she is eligible for the requested benefit at the time of filing the

benefit request."  8 C.F.R. § 103.2(b)(1).  If her petition is approved, she may apply for two-year

conditional-permanent-resident status — also referred to as a conditional green card —from

either within the United States (referred to as an "adjustment of status") or overseas from the

State Department at a consular post in the alien's home country (referred to as "consular

processing").  See 8 U.S.C. § 1186b(a)(1); 8 C.F.R. §§ 204.6(l), 245.2; 22 C.F.R. §§ 42.32(e),

42.41, 42.42.  After the individual has spent two years in this form of permanent-resident status

and if she wants to remain in the United States, she must apply to have the conditional nature of her green card removed using USCIS's Form I-829.  See 8 U.S.C. § 1186b(c).

This case primarily concerns the first stage in that process — the Form I-526 petition. Before delving into the details of Plaintiff's story, it bears mentioning that "[a]n approved visa petition is merely a preliminary step in the visa application process."  Tongatapu Woodcraft Haw., Ltd. v. Feldman, 736 F.2d 1305, 1308 (9th Cir. 1984); see also Bernardo ex rel. M & K Eng'g, Inc. v. Johnson, 814 F.3d 481, 506 (1st Cir. 2016) (Lipez, J., dissenting) (quoting Tongatapu Woodcraft Haw., Ltd., 736 F.2d at 1308).  The agency "may, at any time," revoke the approval of a visa petition for what it "deems to be good and sufficient cause."  8 U.S.C. § 1155. Once USCIS has produced evidence to show cause for revoking the petition, the alien bears the ultimate burden of proving eligibility.  See Tongatapu Woodcraft Haw., Ltd., 736 F.2d at 1308. A petitioner may also file an appeal of the agency's decision to revoke the approval of a visa petition with USCIS's Administrative Appeals Office.  See 8 C.F.R. §§ 103.3(a)(1)(iii), 205.2(d).

B.  Karakenyan's Petition

The Court, as it must at this stage, draws the facts from the Complaint.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Plaintiff is a citizen of Russia, Greece, and Armenia who made his fortune through automobile-related businesses in Russia. See ECF No. 1 (Complaint), ¶ 3.  In 2005, Karakenyan created a property-management business in the United States into which he invested more than $83 million.  Id.  In light of his substantial investments here, Plaintiff embarked on the EB-5 application process by submitting a Form I-526 petition to USCIS in August 2013.  Id., ¶ 4.  Defendant approved that petition on October 26, 2015.  Id.  Plaintiff next sought consular processing via an interview at the United States consulate in Russia.  For ten months, however, USCIS failed to transfer his I-526 petition

approval to the Department of State, a step predicate to Karakenyan's scheduling of an interview. Id., ¶ 5.  Seeking prompt action on the part of the Government, Plaintiff filed a mandamus suit in the Central District of California.  Karakenyan v. Johnson, No. 16-6397 (C.D. Cal. Aug. 25, 2016).  The suit had its intended effect, and his file was transferred to the State Department. Compl., ¶ 6.  Plaintiff thereafter attended a visa interview in Moscow on November 15, 2017. Id., ¶ 7.

Unfortunately for Karakenyan, the more things changed, the more they stayed the same. The Government again left his visa request in limbo, and Karakenyan filed another mandamus action to force the Government to expedite the process.  Id.; see also Karakenyan v. Sessions, No. 18-5115 (C.D. Cal. June 8, 2018).  This suit was less successful, as the State Department allegedly then recommended that USCIS revoke the approval of his I-526 petition.  Id., ¶¶ 8–9. USCIS thus sent Karakenyan a Notice of an Intent to Revoke the petition, and on November 2, 2018, it did, in fact, revoke it.  Id., ¶¶ 8–10; see also ECF No. 16 (Pl. Opp.), Exh. 1 (Notice of Revocation Decision).

The agency's revocation decision rested on two grounds.  First, USCIS found reason to doubt Plaintiff's assertion that his investment would create at least ten full-time positions within two years, a key statutory mandate.  See 8 C.F.R. § 204.6(j)(4)(i); 8 U.S.C. § 1153(b)(5)(A)(ii). As it turned out, two individuals Karakenyan had listed as his enterprise's full-time employees on the I-526 petition owned their own accounting firms with their own employees at the time of his filing.  The apparent impossibility of these persons' dual full-time employments caused the agency to question Karakenyan's credibility along with his need for the other jobs claimed in the petition.  See NRD at 7.  Second, the agency was skeptical that Karakenyan would be sufficiently "engaged in the management of the new commercial enterprise," as required by the

relevant regulations, given certain restrictions on the trust that had established his business.  Id. at 7–8.

Believing that Defendants' actions during his visa-application process had been unlawful, Plaintiff brought the present suit on February 7, 2020.  Counts I and II assert that the revocation decision, along with the State Department's alleged recommendation concerning it, violated the INA and the APA, respectively, because there was no "lawful basis" to revoke his petition.  See Compl., ¶¶ 68–86.  Count III, brought under the Mandamus Act, states that Defendants owe him a "non-discretionary legal duty to adjudicate his . . . petition" and that the Court should compel them to do so.  Id., ¶¶ 87–90.  Finally, Count IV invokes the Declaratory Judgment Act and seeks a declaration of Plaintiff's rights.  Id., ¶¶ 91–92.

Plaintiff requests, among other remedies, for the Court to: (1) "hold unlawful and set aside USCIS's erroneous revocation of Plaintiff's EB-5 petition"; (2) "declare that Plaintiff submitted sufficient evidence to establish that he is eligible for an EB-5 visa and is not inadmissible"; (3) "compel [USCIS] . . . to overturn its revocation decision and approve Plaintiff's EB-5 petition"; and (4) "instruct[] the Department of State to overturn its revocation recommendation and grant Plaintiff an EB-5 visa."  Id. at 16.  Defendants now move to dismiss the case for lack of jurisdiction.

## II.    Legal Standard

Defendants' Motion invokes the legal standards for dismissal under Federal Rule of Civil Procedure 12(b)(1).  When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court has subject-matter jurisdiction to hear his claims.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Absent subject matter jurisdiction over a case, the court must dismiss [the

claim].”  Bell v. U.S. Dep't of Health & Human Servs., 67 F. Supp. 3d 320, 322 (D.D.C. 2014).

“Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a

Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is

acting within the scope of its jurisdictional authority.”  Grand Lodge of Fraternal Order of Police

v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

   In policing its jurisdictional borders, a court must scrutinize the complaint, treating its

factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that

can be derived from the alleged facts.  Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249,

1253 (D.C. Cir. 2005).  The Court need not accept as true, however, “a legal conclusion couched

as a factual allegation,” nor an inference “unsupported by the facts set out in the complaint.”

Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).  The court also need not

rely “on the complaint standing alone,” but may also look to undisputed facts in the record or

resolve disputed ones.  See Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

## III.  Analysis

   In moving to dismiss, Defendants argue that this Court lacks subject-matter jurisdiction

over Plaintiff's claims against USCIS because they all challenge the agency's decision to revoke

his I-526 petition, which is a “wholly discretionary [decision] and not subject to judicial review.”

ECF No. 14 (Gov. MTD) at 1.  Defendants argue, furthermore, that Karakenyan's claims against

the State Department face many hurdles including that he lacks standing to bring them.  In

addition to maintaining that he has standing, Plaintiff rejoins that even if this Court determines

that it lacks jurisdiction to review “straightforward frontal challenges to . . . revocation

decisions,” he has lodged justiciable procedural and “predicate legal” claims against USCIS and

State regarding the revocation decision.  See Pl. Opp. at 14, 21.

The Court first considers whether it has jurisdiction over challenges to the substance of USCIS's visa-petition revocation decision. After concluding that it does not, it examines whether Plaintiff's allegations fall within any potential exception to this jurisdictional bar. It then turns to the claims against the State Department.

A.   Claims against USCIS

1.   *INA Discretionary Bar*

The APA grants a cause of action to persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute." Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984) (quoting 5 U.S.C. § 702). The Act withdraws this statutory grant of jurisdiction, however, "to the extent the relevant statute 'preclude[s] judicial review.'" Id. (quoting 5 U.S.C. § 701(a)(1)). The relevant statute here — that is, the source of agency action that has "aggrieved" Plaintiff — is the INA. The Government points to two interlocking INA provisions in support of its argument that Congress precluded judicial review of Karakenyan's claims. First, § 1252(a)(2)(B)(ii), located at Title 8, Chapter 12, Subchapter II of the U.S. Code, provides:

> [N]o court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of [that official]. . . .

Second, the Government's authority to revoke an approved visa petition is "specified" by § 1155, which falls within Subchapter II, and states: "The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him. . . ." Therefore, if a petition-revocation decision made pursuant to § 1155 qualifies as "discretionary" under § 1252(a)(2)(B)(ii), this Court lacks jurisdiction to review it. Accord El-Khader v. Monica, 366 F.3d 562, 567 (7th Cir. 2004).

While the Circuits remain divided on the breadth of these provisions, the balance of authority is so heavily weighted to one side as to almost tip over the scale.  Alone stands the Ninth Circuit, which has concluded that § 1155's reference to "good and sufficient cause" provides a justiciable standard that limits the agency's discretion and permits Article III review of petition-revocation decisions.  See ANA Int'l, Inc. v. Way, 393 F.3d 886, 893–94 (9th Cir. 2004).  On the other side, nine circuits have held — and a tenth has observed in *dicta* — that § 1252(a)(2)(B)(ii)'s discretionary bar strips courts of jurisdiction to review visa-petition revocation decisions.  Almost all of these decisions, moreover, postdate ANA International.  See Polfliet v. Cuccinelli, 955 F.3d 377, 382–83 (4th Cir. 2020); Bernardo *ex rel.* M & K Eng'g, Inc., 814 F.3d at 482; Mehanna v. U.S. Citizenship & Immigration Servs., 677 F.3d 312, 315 (6th Cir. 2012); Green v. Napolitano, 627 F.3d 1341, 1346 (10th Cir. 2010); Abdelwahab v. Frazier, 578 F.3d 817, 821 (8th Cir. 2009); Sands v. U.S. Dep't of Homeland Sec., 308 Fed. App'x 418, 419–20 (11th Cir. 2009); Ghanem v. Upchurch, 481 F.3d 222, 224–25 (5th Cir. 2007); Jilin Pharm. USA, Inc. v. Chertoff, 447 F.3d 196, 206 (3d Cir. 2006); El-Khader, 366 F.3d at 567–68 (7th Cir. 2004); see also Firstland Int'l, Inc. v. INS, 377 F.3d 127, 131 (2d Cir. 2004) (observing in *dicta* that "the substance of the decision that there should be a revocation is committed to the discretion of the Attorney General").  Even the Ninth Circuit recently appears to be having second thoughts.  See Poursina v. U.S. Citizenship & Immigration Servs., 936 F.3d 868, 875 (9th Cir. 2019) (describing that Circuit's position as "an outlier among the federal circuit courts" and declining to "extend such decision beyond its narrow holding").

Unfortunately for this Court, one of the few yet to opine is our own circuit, which has not addressed whether the INA divests courts of jurisdiction to review petition-revocation decisions. The courts in this district that have considered the issue, however, have sided with the majority

position.  See, e.g., Raval v. U.S. Citizenship & Immigration Servs., 369 F. Supp. 3d 205, 209

(D.D.C. 2019); Mohammad v. Napolitano, 680 F. Supp. 2d 1, 6 (D.D.C. 2009).  Those courts

have reasoned that such a conclusion supplies a correct interpretation of the statute and "accords

with our Circuit's interpretation of other, similarly worded provisions of the INA."  Raval, 369

F. Supp. 3d at 210; see also Zhu v. Gonzales, 411 F.3d 292, 295 (D.C. Cir. 2005) (use of "may"

and "deem" in 8 U.S.C. § 1153(b)(2)(B)(i) committed decision to the Attorney General's

discretion).

        The Court will also yield to the weight of authority here.  As ten circuits have concluded,

the determination that a decision made pursuant to § 1155 qualifies as "discretionary" under the

INA and is therefore not reviewable is compelled by the text of the provision.  Any statute

affecting federal jurisdiction "must be construed both with precision and with fidelity to the

terms by which Congress has expressed its wishes."  Kucana v. Holder, 558 U.S. 233, 252,

(2010) (quotation marks omitted).  The Court is mindful in interpreting the INA that "Congress

has to structure and allocate the resources of our immigration system.  As such, judicial review

may be thought to be warranted in some, but not all, situations."  Bernardo ex rel. M & K Eng'g,

Inc., 814 F.3d at 494.

        Section 1155 states that "[t]he Secretary of Homeland Security may, at any time, for what

he deems to be good and sufficient cause, revoke the approval of any [EB-5 visa] petition."  The

provision thus contains not one, not two, but three discretionary terms: "may," "at any time," and

"for what he deems to be."  8 U.S.C. § 1155.  "Applying three terms indicating discretion, one

after another, does not merely assume, contemplate, or anticipate discretion—it unambiguously

specifies discretion in detail."  Polfliet, 955 F.3d at 382; see also Bernardo ex rel. M & K Eng'g,

Inc., 814 F.3d at 485 ("At least three language choices in § 1155 dictate this conclusion: 'may,'

'at any time,' and 'for what he deems to be good and sufficient cause.'"). Indeed, "it's hard to imagine a clearer grant of discretion" than that provided by § 1155. Doe v. McAleenan, 926 F.3d 910, 913 (7th Cir. 2019). The Court, accordingly, lacks jurisdiction to review the merits of USCIS's petition-revocation decision. Id.

2. *Plaintiff's Claims*

Perhaps reading the writing on the wall, Plaintiff does not waste much ink contesting that the INA's discretionary bar applies to petition-revocation decisions. See Pl. Opp. at 14 n.6 ("For purposes of this Motion, Plaintiff has assumed that this Court will follow the majority of circuit courts in deciding that revocations are committed to agency discretion such that the discretionary bar applies, . . . [but] the D.C. Circuit has not yet spoken."). Karakenyan instead pivots, arguing that his claims against USCIS do not fall within the discretionary bar because he is challenging certain procedural actions taken and "predicate legal questions" addressed concerning the INA. See Pl. Opp. at 21. An examination of Plaintiff's claims, however, belies this characterization.

Some courts of appeals have held that aggrieved parties may obtain review of a narrow range of procedural challenges surrounding USCIS's petition-revocation decisions. See, e.g., Mantena v. Johnson, 809 F.3d 721, 728 (2d Cir. 2015) ("Regardless of whether the substantive revocation decision is shielded from judicial review, . . . the procedure surrounding the substantive decision is [not] similarly shielded."). Examples of such reviewable, "purely procedural" issues include whether the agency satisfied regulatory notice requirements. See Doe, 926 F.3d at 914; Firstland Int'l, Inc., 377 F.3d at 131. As the Government points out, courts have not universally embraced this exception, see, e.g., Rajasekaran v. Hazuda, 815 F.3d 1095, 1099 (8th Cir. 2016) (rejecting it), but, in any event, it cannot save Plaintiff's claims because they are not procedural in nature.

As the Seventh Circuit recently observed in <u>Doe v. McAleenan</u>, a "purely procedural" exception to § 1252(b)'s discretionary bar does not "open the door to challenging discretionary revocations on <u>nominally</u> 'procedural' grounds."  926 F.3d at 914–15 (emphasis added).  After all, to allow a plaintiff to "artfully fram[e] a challenge to the agency's substantive decision as a procedural claim" in order to obtain judicial review would "eviscerate § 1525(a)(2)(B)(ii)."  <u>Id.</u> at 915–16.  <u>Doe</u> concerned circumstances almost identical to those at issue here.  In that case, the plaintiff also challenged USCIS's revocation of his I-526 petition after the agency had concluded that his investment project would not create at least ten domestic jobs.  <u>Id.</u> at 911–12.  Doe claimed that the agency had committed a procedural error by depriving him of a "legitimate opportunity to challenge" the revocation by incorrectly stating the facts and the law surrounding its revocation decision.  <u>Id.</u> at 915.  Yet, as the Seventh Circuit observed in affirming the district court's dismissal for lack of jurisdiction, "[F]or all his 'procedural' framing," Doe, in fact, sought "judicial review of the revocation under the APA's arbitrary-and-capricious standard." <u>Id.</u>  He simply disagreed with the agency's review of the record — in other words, its discretionary decision — an action that the court did not have the authority to review.  <u>Id.</u> at 916.

Similarly, Karakenyan has tried in his submissions to repackage his substantive disagreement with the agency's decision as a procedural challenge.  Yet Plaintiff's Complaint alleges that Defendants violated the INA because they "had no lawful basis to revoke the approved petition," Compl., ¶ 74, "failed to engage in reasoned decision making," <u>id.</u>, ¶ 84, and issued a revocation "unsupported by substantial evidence."  <u>Id.</u>, ¶ 85.  He asks this Court to "declare that Plaintiff submitted sufficient evidence to establish that he is eligible for an EB-5 visa and is not inadmissible"; and to instruct "USCIS to overturn its revocation decision and approve [his] EB-5 petition."  <u>Id.</u> at 16.  In other words, Karakenyan does not assert violations of

his procedural rights, nor does he seek procedural remedies.  Like Doe, he would have this Court delve into the merits of his visa petition and re-weigh the evidence on both sides.  As explained above, however, this Court lacks jurisdiction to engage in his requested "substantial evidence" review, id., ¶¶ 61, 85, and to resolve in Plaintiff's favor "the merits of [his] application."  Doe, 926 F.3d at 915.

The only arguably "procedural" error committed by USCIS and identified by Plaintiff in his submissions was the length of time the agency took to resolve his immigration status, but he does not assert that as a basis for any of his counts, a wise choice given that any delay-related claim is now moot.  See United States v. Sanchez-Gomez, 138 S. Ct. 1532, 1537–38 (2018).

For similar reasons, the Court rejects Karakenyan's attempt to reframe his merits challenge as one that raises a justiciable "predicate legal" question.  See Pl. Opp. at 14–15.  Even assuming that such an exception exists to § 1252(a)(2)(B)(ii)'s discretionary bar, see Abdelwahab, 578 F.3d at 821, it would not apply here.  Some courts have suggested that a justiciable predicate legal question would include, for example, one alleging that the agency "exceed[ed] its statutory authority."  Id. (emphasis omitted).  It would not, however, encompass a challenge to the propriety of an agency action — in this case, the revocation of a visa petition — undeniably permitted by the statute.  Id.

Plaintiff attempts to generate a so-called "predicate legal" argument by claiming that the agency misinterpreted the INA to require that he must already be "engaged in the new commercial enterprise" and have created ten domestic jobs at the time of his petition, rather than that he would do such things in the future.  See Pl. Opp. at 4.  Here again Karakenyan fails in his attempt to repurpose a challenge to USCIS's assessment of the merits of his petition as an attack on the agency's interpretation of the INA itself.  The agency found that inconsistencies regarding

12

the current status of his investment cast doubt on its future viability.  See NRD at 7.  While Plaintiff clearly does not agree with that conclusion, see, e.g., Compl., ¶ 85 ("Defendants' decisions with respect to the petition are unsupported by substantial evidence as required by the APA."), it is not for this Court to re-weigh the evidence and "resolve the merits of [his] application."  Doe, 926 F.3d at 915.

    B.  <u>Department of State</u>

Hoping to circumvent the rebuff of his claims against USCIS, Karakenyan alternatively sues the State Department.  He alleges that State acted unlawfully and violated the INA's procedural requirements in, among other things, allegedly recommending to USCIS that his petition be revoked.  He asks this Court to "overturn" that recommendation, declare it to be invalid, and instruct the State Department to re-adjudicate his petition.  See Compl. at 16.

Even if the State Department made such a recommendation (and Plaintiff offers no evidence that it did), Karakenyan does not have standing to challenge it.  Standing is "a doctrine rooted in the traditional understanding of a case or controversy" in Article III of the Constitution. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  It requires that a plaintiff show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Id.  Plaintiff argues that the Department's actions injured him by preventing him from obtaining an EB-5 visa. To demonstrate redressability, he thus must establish that "it is 'likely, as opposed to merely speculative" that a favorable judgment in this case would allow him at least to pursue his EB-5 visa application.  Raval, 369 F. Supp. 3d at 210 (quoting Lujan, 504 U.S. at 561).

Yet the Court cannot remedy his injury even if it sides with him.  As Defendants point out, if the Court were to "vacate" State's alleged recommendation, such vacatur would not

13

provide Karakenyan with any relief.  Because the Court has dismissed his claims against USCIS, his I-526 petition will still be revoked, and Plaintiff will still be ineligible for an EB-5 visa.  Id. It is more than "speculative"; it is entirely implausible that were the State Department to "reverse" its recommendation, USCIS would reinstate Plaintiff's revoked petition, which the agency expressly revoked on grounds entirely unrelated to State.  See Lujan, 504 U.S. at 561; Raval, 369 F. Supp. 3d at 211 (dismissing claim on redressability grounds because plaintiff "cannot obtain the prerequisite I-140 approval[;] he [therefore] cannot obtain relief that permits the possibility of a successful I-485 application"); see also Vemuri v. Napolitano, 845 F. Supp. 2d 125, 134 (D.D.C. 2012) ("Any injury Plaintiff might attribute to the denial of his . . . application[] could only be redressed by an order requiring Defendants to re-open and ultimately approve [the] . . . petition.").

Plaintiff, consequently, does not have standing to pursue his claims against the State Department.  Given that it resolves the case on this jurisdictional ground, the Court need not address Defendants' other arguments in support of its Motion to Dismiss, including that State is protected by the doctrine of consular nonreviewability.

* * *

At bottom, Plaintiff believes that his investments in this country qualified him for an EB-5 visa and that the Government could not possibly have conducted an adequate assessment of his petition in revoking it.  Even if he is correct, the Act precludes the exercise of judicial review over that decision.  This is not to say that similarly situated petitioners are bereft of any procedural safeguards: they have an opportunity to respond to the petition-revocation decision, to receive an explanation of that decision, and to appeal administratively.  See 8 C.F.R. § 205.2.

"Congress could quite sensibly have concluded that is enough."  <u>Bernardo</u> <u>*ex rel.*</u> <u>M & K Eng'g,</u>

<u>Inc.</u>, 814 F.3d at 494.

IV.    **Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss for lack of

subject-matter jurisdiction.  A separate Order so stating will issue this day.

<u>/s/</u> *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  <u>June 22, 2020</u>